**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

|  |  |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | **OPINION** |
| v. | No. 2:12-cv-7635 (WHW) |
| ALVIN R. BRUCE, | |
| Defendant. | |

**Walls, Senior District Judge**

Plaintiff the United States of America (the "Government") moves for entry of default judgment against Alvin R. Bruce ("Defendant") under the False Claims Act ("FCA"), 31 U.S.C. § 3729 *et seq*. The motion has been decided from the written submissions of the parties under Federal Rule of Civil Procedure 78. The Government's motion is granted.

### FACTUAL AND PROCEDURAL BACKGROUND

Defendant was employed as a conductor with New Jersey Transit and he was suspended indefinitely from that job on January 25, 2008. *See* Ex. 4 at 1 (ECF No. 6-7). Defendant then applied for the Railroad Retirement Board's ("RRB") Unemployment Insurance ("UI") Benefits on January 29, 2008 by completing RRB form UI-1, "Application for Unemployment Benefits and Employment Service." *See id.* Defendant was approved and began to receive RRB UI benefits. *See* Decl. of Stephen C. Naudasher ("Naudasher Decl.") ¶ 7 (ECF No. 6-2).

NOT FOR PUBLICATION

By completing RRB form UI-1, Defendant certified that he understood that false or fraudulent statements made in order to receive RRB UI benefits could result in penalties. Specifically, he certified:

> I know I must immediately report to the RRB any changes which might affect my entitlement to benefits. I understand that disqualifications and civil and criminal penalties may be imposed on me for false or fraudulent statements or claims or for withholding information to get benefits. I understand and agree to the requirements set forth in Booklet UB-10.

Ex. 4 at 2 (ECF No. 6-7).

On February 7, 2008, Defendant was personally interviewed by a Newark RRB District Office Contact Representative as part of the routine monitoring of individuals receiving RRB UI benefits. *See* Ex. 7 (ECF No. 6-10). During the interview, the RRB Contact Representative completed a RRB Form UI-35, "Field Office Record of Claimant Interview," which Defendant signed. *Id.* At the time of that interview, Defendant also signed RRB Form UI-35c, "Certification and Authorization Under the Railroad Unemployment Insurance Act." *See* Ex. 8 (ECF No. 6-11). By signing this form, Defendant acknowledged that in order "to receive unemployment benefits, I know I must be UNEMPLOYED, ABLE TO WORK, and READY AND WILLING TO WORK on all days for which I claim benefits." *Id.*

Following his initial application for RRB-UI benefits, Defendant was required to complete bi-weekly RRB form UI-3, "Claim for Unemployment Benefits." Ex. 6 (ECF No. 6-9). The RRB sent these forms via U.S. mail to Defendant's residence, and Defendant completed the UI-3 claim cards and mailed them to the U.S. RRB's New York District Office. Naudasher Decl. ¶ 12. Each time Defendant completed a UI-3 claim card, for the claim period beginning May 3, 2008 through the claim period beginning December 13, 2008, he answered "no" to question 7a, which asked, "Did you work on any day claimed for any person or company or were you self-employed?" Ex.

6 (ECF No. 6-9). He also answered "no" to question 5a, which asked, "Have you worked for a nonrailroad employer since your last day of railroad work?" *Id.* Defendant signed each form certifying that he understood the possible penalties for false statements, which could include fine, imprisonment, or both. *Id.*

Based on each claim submitted by Defendant, the U.S. Treasury Department issued a check to Defendant which was direct deposited into his Wachovia checking account. *See* Ex. 4 (ECF No. 6-7). Defendant completed this procedure fifteen times between May 3, 2008 and December 13, 2008.[1] Ex. 6 (ECF No. 6-9).

On March 13, 2009, the RRB's Sickness and Unemployment Benefits Division conducted a comparison of the UI benefits Defendant claimed and received from the RRB with the wage and employment information provided by the United Parcel Service ("UPS") to the state of New Jersey. Naudasher Decl. ¶ 16 (ECF No. 6-2). This comparison indicated that there were 149 days in which Defendant worked for UPS while he simultaneously received RRB UI benefits. *See* Ex. 3, "State of Determination, RRB Form UI-27" (ECF No. 6-6). The UI-27 form states that the fraudulent overpayment to Defendant was $9,007.00, plus a fraud penalty. *Id.* The matter was referred to the United States Attorney's Office for the District of New Jersey for prosecution of a false claim against Defendant. Neudasher Decl. ¶ 17 (ECF No. 6-2).

On May 23, 2012, Tawanna Hilliard, Paralegal Specialist for the United States Attorney's Office assigned to this matter, mailed Defendant—via certified mail with return receipt and via regular mail—the initial demand letter informing him of the civil penalties for the false claims allegations pending against him, with a request for a response from either him or his attorney on

---

[1] The Government was unable to locate two UI-3 claim cards for that period of time—one for the claim period of July 26, 2008 and one for the claim period of October 4, 2008. *See* Gov. Br. at 7 (ECF No. 6-1). A review of the Tape Print Out, however, reveals that Defendant submitted claims for and was in fact paid for these periods. Ex. 2 (ECF No. 6-5).

or before June 6, 2012. *See* Declaration of Tawanna Hilliard ("Hilliard Decl.") ¶¶ 1, 3 (ECF No. 6-3). The certified mail with receipt was retuned as unclaimed. *Id.* The letter sent via regular mail was not returned to the United States Attorney's Office as undeliverable. *Id.* ¶ 3. On July 20, 2012, Hilliard mailed a second demand letter in the same fashion, this time attaching the proposed complaint that the office planned to file in district court if it did not hear from Defendant or his attorney about possible resolution by August 3, 2012. *Id.* ¶ 4. Again Defendant did not respond, and again the certified mail with receipt was retuned as unclaimed and the letter sent via regular mail was not returned to the United States Attorney's Office as undeliverable. *Id.*

On December 13, 2012, the United States Attorney's Office filed the complaint against Defendant in this Court, ECF No. 1, and the complaint was forwarded to Special Agent Stephen Naudasher of the United States RRB, Office of Inspector General, for service upon Defendant before April 14, 2013. On April 22, 2013, Hilliard was forwarded a voice message from Defendant that had been left on Assistant United States Attorney Anthony LaBruna's voicemail. Hilliard Decl. ¶ 6 (ECF No. 6-3). In that message, Defendant claimed that he was unaware of the fraudulent unemployment claims and that he had tried contacting Hilliard but was unable to reach her. *Id.* He left a contact number where he could be reached. *Id.* Hilliard's contact information appeared on all correspondence. *Id.* Defendant did not answer any calls that Hilliard placed to his contact number and she was unable to leave a message because the voicemail was not set up. *Id.*

On April 23, 2013, Hilliard mailed Defendant another correspondence detailing all attempts that had been made to contact him, and stating it would be the final attempt to resolve this matter, with a deadline of April 30, 2013 to respond. *Id.* ¶ 7. That letter was returned to the United States Attorney's Office on May 3, 2013 as undeliverable. *Id.* ¶ 8. Hilliard then did a comprehensive people search via Lexis and discovered a different address for Defendant, to which

she forwarded the same April 23, 2013 letter, setting a response deadline of May 10, 2013. *Id.* That letter was also returned as undeliverable on May 10, 2013. *Id.* ¶ 9.

The summons and complaint were duly served upon Defendant on March 11, 2013 by Special Agent Neudasher. ECF No. 3. Defendant never filed an Answer to that complaint. On September 30, 2013, the Clerk of this Court entered default as to Defendant for failure to plead or otherwise defend against this action.

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 55 governs the entry of default and default judgment. The power to grant default judgment "has generally been considered an 'inherent power,' governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." *Hritz v. Woma Corp.*, 732 F.2d 1178, 1181 (3d Cir. 1984) (citations omitted). Because the entry of default prevents claims from being decided on the merits, courts do "not favor entry of defaults or default judgments." *United States v. $55,518.05 in U.S. Currency*, 728 F.2d 192, 194 (3d Cir. 1984).

The Third Circuit considers three factors in determining "whether a default judgment should be granted: (1) prejudice to the plaintiff if default is denied, (2) whether the defendant appears to have a litigable defense, and (3) whether defendant's delay is due to culpable conduct." *Chamberlain v. Giampapa*, 210 F.3d 154, 164 (3d Cir. 2000).

In deciding a motion for default judgment, "the factual allegations in a complaint, other than those as to damages, are treated as conceded by the defendant." *DIRECTV, Inc. v. Pepe*, 431 F.3d 162, 165 (3d Cir. 2005). The court must, however, make "an independent inquiry into 'whether the unchallenged facts constitute a legitimate cause of action'" and "must make an independent determination" regarding questions of law. *Days Inn Worldwide, Inc. v. Mayu &*

*Roshan, L.L.C.*, No. 06-cv-1581(PGS), 2007 WL 1674485, at *4 (D.N.J. June 8, 2007). Similarly, a court does not accept as true allegations pertaining to the amount of damages, and may employ various methods to ascertain the amount of damages due. While the court may conduct a hearing to determine the damages amount, Fed. R. Civ. P. 55(b)(2), a damages determination may be made without a hearing "as long as [the court] ensure[s] that there [is] a basis for the damages specified in the default judgment." *Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp.*, 109 F.3d 105, 111 (2d Cir. 1997).

## DISCUSSION

### I. Default Judgment is Appropriate

This cause of action is based on Defendant's violation of the FCA, 31 U.S.C. § 3729 *et seq*. The FCA reads in pertinent part that:

> [A]ny person who—(A) knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval; (B) knowingly makes, uses, or causes to be made or used a false record or statement material to a false or fraudulent claim; . . . or (G) knowingly makes, uses, or causes to be made or used, a false record or statement material to an obligation to pay or transmit money or property to the Government, is liable to the United States Government for a civil penalty of not less than $5,000 and not more than $10,000, as adjusted by the Federal Civil Penalties Inflation Adjustment Act of 1990 (28 U.S.C. 2461 note; Public Law 104-410), plus three times the amount of damages which the Government sustains because of the act of that person.

31 U.S.C. § 3729(a)(1) (2006).

"A plaintiff, in order to establish a prima facie FCA violation under section 3729(a)(1), must prove that '(1) the defendant presented or caused to be presented to an agent of the United States a claim for payment; (2) the claim was false or fraudulent; and (3) the defendant knew the claim was false or fraudulent.'" *U.S. ex rel. Wilkins v. United Health Grp., Inc.*, 659 F.3d 295, 304-05 (3d Cir. 2011) (quoting *U.S. ex rel. Schmidt v. Zimmer, Inc.*, 386 F.3d 235, 242 (3d Cir. 2004)).

Here, the Government has provided the Court with record evidence that (1) Defendant presented various claims for the payment of RRB UI benefits to the RRB and that (2) those claims were fraudulent because Defendant was simultaneously employed by and earning wages from UPS. *See* Ex. 1 (ECF No. 6-4); Ex. 2 (ECF No. 6-5); Ex. 6 (ECF No. 6-9). The Government also established that (3) Defendant did so knowingly because he certified, on various occasions, including on every UI-3 claim card, that he was not otherwise employed. *See* Ex. 6 (ECF No. 6-9); Ex. 7 (ECF No. 6-10); Ex. 4. (ECF No. 6-7). As a result, the Government improperly paid Defendant $9,007.00. Ex. 3 (ECF No. 6-6). The Government has pled the elements of this claim and put forth unchallenged facts which constitute a legitimate cause of action.

Under the *Chamberlain* factors, default judgment is appropriate. The Government will suffer prejudice if default is denied because over four years have passed since Defendant was improperly paid the RRB UI benefits at issue, and the Government has already expended significant time and resources in attempting to resolve this matter and make itself whole. Defendant has not presented any facts or arguments to suggest he has a litigable defense for his conduct. It is not clear if Defendant's failure to litigate is the result of willful or bad faith conduct, though he has failed to retain counsel—in the face of repeated requests and warnings—for nearly one and a half years. Having considered these three factors, the Court finds that default judgment is appropriate.

**II.   Damages**

If a Defendant is found liable under the FCA, he or she:

> [I]s liable to the United States Government for a civil penalty of not less than $5,000 and not more than $10,000, as adjusted by the Federal Civil Penalties Inflation Adjustment Act of 1990 (28 U.S.C. 2461 note; Public Law 104-410), plus three times the amount of damages which the Government sustains because of the act of that person.

31 U.S.C. § 3729(a). Defendant is liable for $27,021.00 (three times the $9,007.00 he was improperly paid), in addition to a civil penalty between $5,500 and $11,000 (the statutory amount as adjusted by the Federal Civil Penalties Inflation Adjustment Act of 1990, *see* 28 C.F.R. § 85.3(a)(9)) for each false claim. 31 U.S.C. § 3729(a). The legislative history of the 1986 amendments to the FCA makes clear that civil penalties are "automatic and mandatory for each claim which is false." S. Rep. No. 345, 99th Cong., 2d Sess. 8 (1986), *reprinted in* 1986 U.S.C.C.A.N. 5266, 5273. Because of the relatively low total sum of fraudulently paid benefits and the other facts of this case, the Court finds the statutory minimum civil penalty of $5,500 for each false claim appropriate. Defendant is therefore liable to the Government for the sum of $27,021.00 and $82,500 ($5,500 times the fifteen false claims), or a total of $109,521.00.

## CONCLUSION

Plaintiff's motion for default judgment is granted. Judgment is entered against Defendant in the amount of $109,521.00.

October 25, 2013

**/s/ William H. Walls**
United States Senior District Judge